**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| KATHERINE FINGER,<br><br>Plaintiff,<br><br>v.<br><br>MAXAR TECHNOLOGIES INC., DANIEL L. JABLONSKY, HOWELL M. ESTES, III, NICK S. CYPRUS, ROXANNE DECYK, JOANNE O. ISHAM, C. ROBERT KEHLER, L. ROGER MASON JR., GILMAN LOUIE, HEATHER WILSON, ERIC J. ZAHLER, and EDDY ZERVIGON,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Katherine Finger ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Maxar Technologies, Inc. ("Maxar" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Advent International Corporation ("Advent").[1]

2. On December 15, 2022, the Company entered into an Agreement and Plan of

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Merger with affiliates of Advent, Galileo Parent, Inc. ("Parent"), Galileo Bidco, Inc. ("Merger Sub"), and solely for the purposes set forth therein, Galileo Topco, Inc. ("Preferred Equity Issuer"). The Merger Agreement provides that Maxar stockholders will receive $53.00 in cash per share of Maxar common stock in connection with the Proposed Transaction.[2]

3. The Company's corporate directors subsequently authorized the March 16, 2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] In connection with the Proposed Transaction, funds advised by Advent have committed an aggregate equity contribution of $3.1 billion and British Columbia Investment Management Corporation ("BCI") is providing a minority equity investment through a committed aggregate equity contribution equal to $1.0 billion.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for April 19, 2023.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, the owner of Maxar common stock.

10. Defendant Maxar is a Delaware corporation with its principal executive offices located at 1300 West 120th Avenue, Westminster, Colorado 80234. Maxar's shares trade on the New York Stock Exchange under the ticker symbol "MAXR." Founded in 1957, Maxar provides space solutions and secure, precise, and geospatial intelligence solutions in the United States, Asia, South America, Europe, the Middle East, Australia, Canada, and internationally. The Company operates through two segments: Earth Intelligence and Space Infrastructure. The Earth Intelligence segment offers earth imagery and other geospatial data sourced from its advanced satellite constellation and third-party providers to public sector and enterprise customers, as well as a provides advanced geospatial information, applications, and analytic

3

services for national security and commercial solutions. Its solutions include satellite access, geospatial foundation, precision mapping, on-demand intelligence, and geospatial services. The Space Infrastructure segment provides space-based infrastructure, robotics, sub-systems, and information solutions, including communication and imaging satellites and payloads; platforms for space exploration and hosting instruments for earth science; space subsystems for power, propulsion, and communication; satellite ground systems and support services; space-based remote sensory solutions; space robotics; and defense systems. This segment serves government agencies and satellite operators.

11. Defendant Daniel L. Jablonsky is and has been President, Chief Executive Officer and a director of the Company at all times relevant hereto.

12. Defendant Howell M. Estes, III is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

13. Defendant Nick S. Cyprus is and has been a director of the Company at all times relevant hereto.

14. Defendant Roxanne Decyk is and has been a director of the Company at all times relevant hereto.

15. Defendant Joanne O. Isham is and has been a director of the Company at all times relevant hereto.

16. Defendant C. Robert Kehler is and has been a director of the Company at all times relevant hereto.

17. Defendant L. Roger Mason Jr. is and has been a director of the Company at all times relevant hereto.

18. Defendant Gilman Louie is and has been a director of the Company at all times relevant hereto.

19. Defendant Heather Wilson is and has been a director of the Company at all times relevant hereto.

20. Defendant Eric J. Zahler is and has been a director of the Company at all times relevant hereto.

21. Defendant Eddy Zervigon is and has been a director of the Company at all times relevant hereto.

22. Defendants identified in paragraphs 11-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

23. On December 16, 2023, Maxar and Advent jointly announced in relevant part:

WESTMINSTER, Colo. & BOSTON--(BUSINESS WIRE)--Maxar Technologies (NYSE:MAXR) (TSX:MAXR) ("Maxar" or the "Company"), provider of comprehensive space solutions and secure, precise, geospatial intelligence, today announced that it has entered into a definitive merger agreement to be acquired by Advent International ("Advent"), one of the largest and most experienced global private equity investors, in an all-cash transaction that values Maxar at an enterprise value of approximately $6.4 billion. Advent is headquartered in the United States and has a demonstrable track record as a responsible owner of defense and security businesses. Following the close of the transaction, Maxar will remain a U.S.-controlled and operated company.

Under the terms of the definitive merger agreement, Advent has agreed to acquire all outstanding shares of Maxar common stock for $53.00 per share in cash. The purchase price represents a premium of approximately 129% over Maxar's closing stock price of $23.10 on December 15, 2022, the last full trading day prior to this announcement, an approximately 135% premium to the 60-day volume-weighted average price prior to this announcement, and a premium of approximately 34% over Maxar's 52-week high.

Following the closing of the transaction, Maxar will benefit from the significant resources, operational expertise and capacity for investment provided by Advent.  As a private company, Maxar will be able to accelerate investments in next-generation satellite technologies and data insights that are vital to the Company's government and commercial customers, as well as pursue select, strategic M&A to further enhance the Company's portfolio of solutions.  This includes supporting the successful delivery of the new Legion satellite constellation, accelerating the launch of Legion 7 and 8 satellites and further growing the Earth Intelligence and Space Infrastructure businesses through investments in next-generation capabilities, such as advanced machine learning and 3D mapping.  With approximately $28 billion invested across the defense, security and cybersecurity sectors in the last three years, Advent's portfolio companies have substantial expertise supporting many satellite and defense platforms which serve the U.S. government and its allies as well as companies across the globe.

"This transaction delivers immediate and certain value to our stockholders at a substantial premium," said General Howell M. Estes, III (USAF Retired), Chair of Maxar's Board of Directors.  "Maxar's mission has never been more important, and this transaction allows us to maximize value for stockholders while accelerating the Company's ability to deliver its mission-critical technology and solutions to customers over the near and long term."

"Today's announcement is an exceptional outcome for stockholders and is a testament to the hard work and dedication of our team, the value Maxar has created and the reputation we have built in our industry," said Daniel Jablonsky, President and CEO of Maxar.  "Advent has a proven record of strengthening its portfolio companies and a desire to support Maxar in advancing our long-term strategic objectives.  As a private company, we will have enhanced flexibility and additional resources to build on Maxar's strong foundation, further scale operations and capture the significant opportunities in a rapidly expanding market."

"We have tremendous respect and admiration for Maxar, its industry-leading technology and the vital role it serves in supporting the national security of the United States and its allies around the world," said David Mussafer, Chairman and Managing Partner of Advent.  "We will prioritize Maxar's commitment as a core provider to the U.S. defense and intelligence communities, and allies, while providing Maxar with the financial and operational support necessary to apply its technology and team members even more fully to the missions and programs of its government and commercial customers."

"In our view, Maxar is a uniquely positioned and attractive asset in satellite manufacturing and space-based high-resolution imagery, with an incredible workforce and many opportunities ahead," said Shonnel Malani, Managing

Director and global head of Advent's aerospace and defense team. "We have strong conviction in the growing need for the differentiated solutions Maxar provides, and our goal is to invest in expanding Maxar's satellite constellation as well as supporting Maxar's team to push the boundaries of innovation, ensuring mission success for its customers."

**Transaction Details**

Under the terms of the agreement, which has been unanimously approved by Maxar's Board of Directors, Maxar stockholders will receive $53.00 in cash for each share of common stock they own.

Advent has arranged committed debt and equity financing commitments for the purpose of financing the transaction, providing a high level of closing certainty. Funds advised by Advent have committed an aggregate equity contribution of $3.1 billion and British Columbia Investment Management Corporation ("BCI") is providing a minority equity investment through a committed aggregate equity contribution equal to $1.0 billion, both on the terms and subject to the conditions set forth in the signed equity commitment letters.

The agreement includes a 60-day "go-shop" period expiring at 11:59 pm EST on February 14, 2023. During this period, the Maxar Board of Directors and its advisors will actively initiate, solicit and consider alternative acquisition proposals from third parties. The Maxar Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Maxar does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required. The Company, Advent and BCI will contemporaneously pursue regulatory reviews and approvals required to conclude the transaction.

The transaction is expected to close mid-2023, subject to customary closing conditions, including approval by Maxar stockholders and receipt of regulatory approvals. The transaction is not subject to any conditionality related to the launch, deployment or performance of Maxar's WorldView Legion satellite program. Upon completion of the transaction, Maxar's common stock will no longer be publicly listed. It is expected that Maxar will continue to operate under the same brand and maintain its current headquarters in Westminster, Colorado.

The foregoing description of the merger agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the merger agreement, which Maxar will be filing on Form 8-K.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Maxar and Wachtell, Lipton, Rosen & Katz is serving as lead counsel to Maxar. Milbank LLP is serving as Maxar's legal advisor with respect to certain space industry and regulatory matters.

Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC are serving as financial advisors to Advent and Weil, Gotshal & Manges LLP is serving as lead counsel to Advent. Covington & Burling LLP is serving as Advent's legal advisor with respect to certain regulatory matters.

Skadden, Arps, Slate, Meagher & Flom LLP is serving as lead counsel to BCI. Freshfields Bruckhaus Deringer LLP is serving as BCI's legal advisor with respect to certain regulatory matters.

**The Materially Incomplete and Misleading Proxy Statement**

24. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on March 16, 2023  The Proxy Statement, which recommends that Maxar stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Maxar; (b) the financial analyses that support the fairness opinions provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); (c) the go-shop process; and (d) potential conflicts of interest faced by J.P. Morgan and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts and*

25. The Proxy Statement fails to disclose material information concerning the "Forecasts" for the Company.

26. For example, with respect to the Company's "July 2022 Base Case Forecast," "October 2022 Satellite Loss Case Forecast," "October 2022 Base Case Forecast," "November

2022 Base Case Forecast," and "November 2022 Satellite Loss Case Forecast," the Proxy Statement fails to disclose the line items underlying the calculation of both Adjusted EBITDA and Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Financial Analyses*

27. The Proxy Statement fails to disclose material information concerning J.P. Morgan's and Evercore's respective financial analyses.

28. With respect to the *Discounted Cash Flow Analysis* performed by J.P. Morgan, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) the Company's net debt as of December 31, 2022; (c) the Company's tax credits expected to be utilized by Maxar through fiscal year 2027 and beyond as provided by the management of Maxar; and (d) the Company's fully diluted outstanding shares.

29. With respect to the *Selected Transactions Multiple Analysis* and *Public Trading Multiples Analysis* performed by J.P. Morgan, the Proxy Statement fails to disclose the respective individual multiples and financial metrics for each of the selected companies and transactions analyzed by the financial advisor.

30. With respect to J.P. Morgan's analysis of the price targets set by published equity research analysts for shares of Maxar common stock, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

*Material Misrepresentations and/or Omissions Concerning the Go-Shop Process*

31. The Proxy Statement fails to disclose material information concerning the go-shop process, including the terms of the confidentiality agreements the Company entered into with two parties during the go-shop process, including whether either confidentiality agreement

contains a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding either party from submitting a topping bid for the Company.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's and Company Insiders' Potential Conflicts of Interest*

32. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by J.P. Morgan, including whether J.P. Morgan has performed any services for BCI or any of its affiliates in the two years prior to rendering its fairness opinion, and if so, the nature of the services provided, and the compensation received for such services.

33. The Proxy Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest, including whether any of Advent's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

34. The omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of J.P. Morgan Securities LLC," "Background of the Merger," and "Interests of Maxar's Executive Officers and Directors in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

35. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

## **COUNT I**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Maxar**

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Maxar is liable as the issuer of these statements.

38. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Maxar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Maxar and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations

as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.      Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  March 20, 2023                 **LONG LAW, LLC**

                                       By:  */s/ Brian D. Long*
                                                 Brian D. Long (#4347)
                                                 3828 Kennett Pike, Suite 208
                                                 Wilmington, DE 19807
                                                 Telephone: (302) 729-9100
                                                 Email: BDLong@LongLawDE.com

                                                 *Attorneys for Plaintiff*